# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **PANAKEIA, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | **NO. 1:18-cv-05209-MLB** |
| **v.** | ) | |
| | ) | |
| **CHART INDUSTRIES, INC. and** | ) | |
| **CAIRE, INC., a wholly owned subsidiary** | ) | |
| **of CHART INDUSTRIES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Panakeia, LLC ("Panakeia") hereby makes and files this its First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) against Defendant Chart Industries, Inc. ("Chart"), and Defendant Caire, Inc. ("Caire"), and collectively referred to herein as the "Chart Entities", showing the Court as follows:

## PARTIES AND RELEVANT NON-PARTIES

1.

Panakeia is a Virginia limited liability company with its principal place of business at 11719-B Jefferson Avenue, Suite 108, Newport News, Virginia 23606. Its sole members are residents of Virginia and Florida.

Plaintiff's First Amended Complaint                                        Page 1

2.

Chart is a Delaware corporation with its principal place of business at 3055 Torrington Drive, Ball Ground, Cherokee County, Georgia 30107.

3.

Chart is registered as a foreign corporation with the Georgia Secretary of State, and may be served by and through its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092.

4.

Caire is a Delaware corporation with its principal place of business located at 2200 Airport Industrial Drive, Suite 500, Ball Ground, Cherokee County, Georgia 30107.

5.

Caire is registered as a foreign corporation with the Georgia Secretary of State, and may be served through its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092.

6.

Non-Party NGK Spark Plug Co., Ltd. ("NGK Spark Plug") is a publicly traded Japanese company based in Nagoya, Japan. It is the largest OE supplier and manufacturer of spark plugs, oxygen sensors and A/F sensors for domestic and import vehicles in North America. NGK Spark Plug has manufacturing, inventory and distribution facilities in Irvine, California; Sissonville, West Virginia; and Chicago, Illinois.

7.

Non-Party Atlantic Diving Supply, Inc. ("ADS") is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. ADS is a Top 50 Federal Contractor and a Top 5 Defense Logistics Agency ("DLA") holding more than 50 Indefinite Delivery, Indefinite Quantity ("IDIQ") contracts and Blanket Purchase Agreements ("BPAs").

8.

Non-Party Tribalco, LLC ("Tribalco") is a privately held company based in Bethesda, Maryland.  It is a global systems integrator providing mission-critical information technology, telecommunications, and soldier survival solutions to government and commercial customers worldwide.

## JURISDICTION AND VENUE

9.

Chart and Caire are, and at all times relevant herein have been, engaged in commerce, or in activities affecting commerce.

10.

The Court has original jurisdiction over the subject matter of this action pursuant to diversity of citizenship of the parties, 28 U.S.C. §§ 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Pursuant to 28 U.S.C. §§ 2201 and 2202, Panakeia also seeks a declaration that the PGCD Agreement is valid and enforceable.

11.

This Court also has supplemental jurisdiction over the appended state law claims pursuant to 28 U.S.C. § 1367.

12.

Venue is proper in this Court under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district and Defendants are found or transact business in this judicial district.

## FACTUAL BACKGROUND

## CREATION OF PANAKEIA

13.

Panakeia is a certified Service-Disabled Veteran-Owned Small Business ("SDVOSB") that is nationally accredited by The Joint Commission's Home Care Accreditation program specializing in marketing, training and distributing advanced medical products to the military, prehospital care and emergency medical systems ("EMS"), law enforcement, fire/rescue, Veterans Administration, hospital critical care, and home care.

14.

Since April 2011, Panakeia has primarily devoted its marketing, promotion and distribution efforts to the sale and purchase of the oxygen concentrator known as "SAROS" which was developed during an eight (8) year period (from 2002-2010) by a company known as SeQual Technologies, Inc. ("SeQual").

15.

In 2000, SeQual employed Panakeia principal, Pamela Jackson ("Jackson") as the Director of Portable Oxygen Systems. During that same time, Panakeia principal, Claude V. "Jim" Meadows ("Meadows") served as a contracted consultant serving SeQual in Government Relations and Business Development.

Plaintiff's First Amended Complaint                                    Page 5

16.

Meadows and Jackson were instrumental in the eight (8) year development of the Rotary Valve Pressure Swing Adsorption Oxygen Generator, which commercially became known as the SAROS.

17.

The SAROS product development was a Congressional interest item to remove oxygen cylinders off the battlefield because of dangers associated with compressed oxygen gas.  Congress appropriated millions of earmarked dollars toward this initiative over the 8-year development. The US Army Medical Research and Materiel Command (USAMRMC) provided oversight of the product development with SeQual to meet the Army's requirements for a rugged, lightweight portable oxygen generation system.

18.

SAROS' light weight makes it ideal for use on the battlefield by the United States Army, Air Force, Navy and Marines since conventional oxygen cylinders pose harm, danger and logistical challenges on battlefield.

19.

Panakeia was instrumental in the introduction and sale of the SAROS into the US Special Forces Command in 2011 through its relationship with Tribalco who was awarded the Department of Defense contract for the Tactical Combat Casualty Care (TCCC) Special Operations Casualty Evacuation Kit ("CASEVAC") Set in 2012.

20.

After SeQual developed SAROS, it was acquired by Chart's former biomedical subsidiary, Caire (and now owned by NGK Spark Plug) in or about December 2010.

21.

In December 2010, after it was announced that Chart was going to acquire SeQual, Meadows and Jackson were invited to meet with Chart's president, Steve Shaw ("Shaw") in Tampa, Florida, while attending the Special Operations Medical Association annual conference.

22.

At the Tampa meeting, Shaw asked Meadows and Jackson to consider forming a company to develop the market and sales channel of SAROS (soon to be Caire) oxygen systems in the military market, a market that Shaw felt was too

difficult and costly for Chart to pursue because of the constant uncertainty of military budgets.

23.

Thereafter, Panakeia was incorporated in January 2011 and began marketing and selling the SAROS and other Chart products to the federal government.

24.

On April 11, 2011, the Caire and Chart executed the first Distributor Agreement ("Distributor Agreement") outlining the terms and conditions for Panakeia to serve as a distributor and reseller for Chart on a non-exclusive basis. A true and correct copy of the Distribution Agreement is attached hereto as **Exhibit "A."**

25.

The initial term of the Distributor Agreement was for two (2) years, automatically renewing every year. The Pricing paragraph states, "Chart may, from time to time, at any time and in its sole discretion *after consultation with Distributor*, change such prices, such change to be effective when notice thereof is deemed to have been given to Distributor." (Schedule 1 to Distributor Agreement, p. 2, *emphasis provided*).

26.

Per the Distributor Agreement, the SAROS unit had an initial price of $3,875.00 for 2011 and identified product accessories to also receive a 24% discount off of Chart's then current retail prices.

27.

Because Panakeia was created at the insistence of Chart's President, it received favorable pricing to try to develop Chart's products in the military market while Panakeia's principals devoted all of their time, money, energy, experience and contacts to promote Chart and the SAROS units.

28.

On August 9, 2011, the Distributor Agreement was modified to include additional price lists for the various products Chart offered for Panakeia to distribute. A true and correct copy of the Amendment to the Distributor Agreement is attached hereto as **Exhibit "B."**

29.

On November 12, 2012, Caire and Panakeia executed the Second Amendment to the Distributor Agreement. Such Second Amendment modified some of the terms and conditions of the Distributor Agreement, including freight chargebacks, discrepancies, and restocking fees. No price changes were included.

A true and correct copy of the Second Amendment to the Distributor Agreement is attached hereto as **Exhibit "C."**

30.

From 2011 through 2014, Panakeia's price for the SAROS unit hovered between or $3,875.00 and $4,150.00. There was only one price increase in four years.

| Date | PK Price | | Chart Increase |
|---|---|---|---|
| 2011 | $3,875.00 | $- | 0.00% |
| 2012 | $3,875.00 | $- | 0.00% |
| 2013 | $4,150.00 | $300.00 | 7.79% |
| 2014 | $4,150.00 | $- | 0.00% |

**THE OXYGEN GENERATING FIELD PORTABLE ("OGFP")**

31.

After four (4) years of Panakeia effort, the U.S. Army's Medical Research and Material Command ("MRMC"), issued a formal solicitation in 2014 for the "Rotary Valve Pressure Swing Adsorption" Oxygen System called the Oxygen Generating Field Portable ("OGFP"), part number 9400-OGFP.  The OGFP was a kit that included the SAROS unit as its principal component, and accessories in a specially designed carrying case.

Plaintiff's First Amended Complaint                                    Page 10

32.

Panakeia approached Chart to see if Chart would be willing to kit and package all of the parts in addition to manufacturing the SAROS unit to meet the requirements of the solicitation.

33.

Chart was not interested in kitting and packaging the units per the requirements of the solicitation, and was only interested in producing the SAROS separately as part number 9400-SEQ.

34.

Panakeia then reached out to one of its Sub-Distributors, Atlantic Diving Supply, Inc. ("ADS"), a military vendor for marine life saving, diving, search and rescue equipment and kit packer for the U.S. Military.

35.

Panakeia and ADS had executed a Master Sub-Distributor Agreement on November 12, 2012 (the "ADS Sub-distributorship Agreement") whereby ADS purchased a variety of products through Panakeia, including the SAROS unit, and other products manufactured by the Chart Entities. A true and correct copy of the ADS Sub-distributorship Agreement is attached hereto as **Exhibit "D."**

36.

The ADS Sub-distributorship Agreement identifies ADS as the sub-distributor of the Panakeia Chart Distributor Agreement signed on April 11, 2011, as well as the First Amendment dated August 9, 2011, and Second Amendment dated November 12, 2012 (collectively the "Chart Agreement").

37.

After the Chart Entities declined the offer to kit the OGFP, Panakeia approached its sub-distributor, ADS to seek their help in kitting and packaging the OGFP kits so that they could jointly prepare a proposal to supply the OGFP requirements to the Government.

38.

On July 28, 2014, in preparation for submitting the OGFP proposal, Meadows and Jackson met in Ball Ground, GA with Brett Townsend, Taylor Ingram ("Ingram") and others of Chart to discuss the pricing terms, build forecasts, and other items for the OGFP proposal that would require them to bid on a multi-year Indefinite Delivery/Indefinite Quantity ("IDIQ") contract, a base year with three additional option years.

39.

The OGFP proposal required a pricing proposal for four (4) years with economic price adjustments and quantity discounts. Since the Chart Entities provided the key element to the OGFP, the SAROS unit, an agreement with the Chart Entities regarding economic pricing adjustment was necessary year over year.

40.

At the July 28, 2014 meeting, the Chart Entities agreed to an annual price increase of no more than 4.25% (based on 2014 Consumer Price Index ("CPI") for medical equipment) during the term of the OGFP contract, so that Panakeia could price it appropriately. The 4.25% increase was mandated year over year by the manufacturer, which was outlined in the Solicitation Pricing Proposal submitted with the OGFP, a true and correct copy of which is attached hereto as **Exhibit "E."**

41.

On June 29, 2015, ADS, prime contractor, along with Panakeia, subcontractor to prime, prepared a proposal, including a Pricing Proposal for the base year and three (3) option years, for submission for Solicitation No. W81XWH-14-R-0057 for the OGFP System (the "Solicitation") submitted to the U.S. Army Medical Research Acquisition Activity ("USAMRAA").

42.

The Executive Summary of the Solicitation outlines the relationship between

Panakeia and ADS, "ADS has partnered with Panakeia, LLC, a highly experienced

supplier of the SAROS to the military market in order to provide the best value

OGFP System to the USAMRAA". (Executive Summary is attached hereto as

**Exhibit "F."**)

43.

On August 5, 2015, a revised proposal was submitted by the ADS/Panakeia

team to the Contract Officer for the OGFP solicitation to provide additional requested

information including, technical data, new delivery and pricing schedules for the

OGFP solicitation.

44.

On August 25, 2015, the USAMRAA awarded the ADS/Panakeia team an

IDIQ Firm Fixed Price contract (FFP) contract awarding them a four-year contract

(base year, plus three (3) optional renewal years) (the "Prime Contract"). After the

initial award, the Army has exercised each option year thereafter, and the current

term of the Prime Contract expires on August 27, 2019. A true and correct copy of

the Prime Contract is attached hereto as **Exhibit "G."**

45.

Pursuant to the terms of the Prime Contract, ADS is limited to an annual price increase of 4.25% for the OGFP for each option year based on the limitation on annual price increases agreed to between ADS, Panakeia and the Chart Entities before the Solicitation was submitted to the USAMRAA.

46.

On November 17, 2015, after the Prime Contract was executed, the Chart Entities notified Panakeia that beginning on January 1, 2016, the SAROS Oxygen System and accessories would increase its price by 4.25% in keeping with the terms discussed and agreed upon by Chart and Panakeia at the July 28, 2014, meeting. A true and correct copy of the correspondence from Chart notifying Panakeia of the price increase is attached hereto as **Exhibit "H."**

47.

On or about March 24, 2016, Jackson emailed Sean Kharche, then Vice President and General Manager of Chart, Inc. to discuss Panakeia's SAROS pricing required for the OGFP Contract beginning on September 1, 2016.

48.

In response to Jackson's email, Kharche wrote, "Yes, we will honor the 4.25% increases starting September 1, 2016 and each year afterward." A true and correct copy of the e-mail string is attached hereto as **Exhibit "I."**

49.

Once the OGFP Prime Contract was awarded, Chart honored the 4.25% annual price increase limitation for annual renewals for each of the first three contract years.

## **PARTNER GOVERNMENT CHANNEL DISTRIBUTION AGREEMENT**

50.

On or about July 22, 2017, Caire (identified as Chart) presented Panakeia with a new Partner Government Channel Distributor Agreement claiming that it incorporated new federal regulations, and changed some of the other "minor" terms of the prior Distributor Agreement, including the intellectual property language. A true and correct copy of the Partner Government Channel Distributor Agreement ("PGCD Agreement") is attached hereto and incorporated herein as **Exhibit "J."**

51.

The PGCD Agreement provides, "The Parties agree that Chart is not bound by any provisions not included in this Agreement, or any provisions included in any

Plaintiff's First Amended Complaint                                Page 16

contracts Distributor and any of its customers, or any Federal Acquisition

Regulations, except for those setforth (sic) in Exhibit C with respect to the OGFP

Government IDIQ contract, that apply to Chart or Distributor as part of

Distributor's sales of Products to their customers, unless and until Distributor

obtains Chart's prior written consent to be expressly bound by any such

provisions." (PGCD Agreement, §8.)

52.

The Pricing term in the PGCD Agreement states, "Chart may, from time to

time and in its sole discretion *after consultation with Distributor*, change such

prices, such change to be effective 90 days after given notice to Distributor."

(PGCD Agreement, §7) (emphasis provided).

53.

On August 18, 2017, Chart, by and through Christopher R. Southerland, Vice

President of the Respiratory Division of Caire notified Panakeia of a price increase:

> This letter serves as notice that the contracted yearly price increase of
> 4.25% built into the SAROS agreement will be reflected on all new
> orders as of September 1, 2017. Also, per our distribution agreement
> between CAIRE, Inc. and Panakeia, LLC dated July 22, 2017 and
> defined in Clause (7), Pricing and Notification, CAIRE is providing 90
> days advance notice of price increases reflected on certain parts and
> accessories (see attached) that will go into effect on December 1, 2017.

54.

A true and correct copy of the August 18, 2017 correspondence which constitutes Chart's written consent to be bound by the 4.25% cap on the annual price increases for the SAROS units and related accessories and parts is attached hereto as **Exhibit "K."**

55.

Pursuant to the price increase letter, Panakeia paid $4,702.00 for the SAROS unit.

56.

In 2017, more than seventy-five percent (75%) of Panakeia's business came from selling Chart products.

## THE PRICING DISPUTE

57.

On July 16, 2018, Caire notified Panakeia of another price increase citing Section 7 of the PGCD Agreement, but Caire failed to consult and notify Panakeia prior to issuing the price list, and failed to abide by the 4.25% price increase imposed by the Prime Contract and prior agreements. A true and correct copy of the price increase letter and the price list dated July 16, 2018 is attached hereto as **Exhibit "L."**

58.

The new July 16, 2018 price imposed by the Chart Entities imposed a 32.9%
increase over the prior year for the SAROS unit, and sought to charge $6,250.00 for
the SAROS oxygen system.

59.

The new July 16, 2018 price list also imposed increases on many of the
accessories and other parts of the SAROS oxygen system in excess of the 4.25%
imposed by the Prime Contract.

60.

The price for the SAROS batteries until July 16, 2018 was $260.00 each, and
after the July 16, 2018 pricing increase, the batteries cost $372.00 each, an increase
of 43% over the prior year.

61.

Since July 16, 2018, Panakeia has been forced to purchase many of the parts
and accessories at the exorbitant rates charged by the Chart Entities.

62.

Despite the established course of dealing between the parties, the Chart
Entities refused to be bound by the Prime Contract pricing agreement and the terms

Plaintiff's First Amended Complaint                                          Page 19

of the PGCD Agreement.  Since the inception of Panakeia, Chart had never

increased its price more than 7.9%. A chart showing Panakeia's prices for the

SAROS units since the inception of Panakeia is set forth below:

| | | | |
|---|---|---|---|
| 2011 | $3,875.00 | $- | 0.00% |
| 2012 | $3,875.00 | $- | 0.00% |
| 2013 | $4,150.00 | $300.00 | 7.79% |
| 2014 | $4,150.00 | $- | 0.00% |
| 2015 | $4,326.38 | $176.38 | 4.25% |
| 2016 | $4,510.25 | $183.87 | 4.25% |
| 2017 | $4,702.00 | $191.69 | 4.25% |
| October 15, 2018 | $6250.00 | $1,548.00 | 32.9% |
| *October 18, 2018 | $7,500.00 | $2,798.00 | 59.5% |

Note:  *This increase is based on the 2017 price.

63.

On August 23, 2018, Panakeia, by and through counsel, notified the Chart

Entities of its pricing dispute with Panakeia and offered a face-to-face meeting to

resolve the dispute.  A true and correct copy of Panakeia's August 23, 2018

correspondence is attached hereto as **Exhibit "M."**

64.

The Chart Entities failed and refused to meet with Panakeia by the requested

deadline.

65.

On September 10, 2018, Panakeia received notice from ADS that it intended to terminate the Sub-Distributorship Agreement effective November 12, 2018. A true and correct copy of the ADS termination notice is attached hereto as **Exhibit "N."**

66.

On October 15, 2018, Panakeia placed an order for additional SAROS Units at $4,702.00 price (Purchase Order No. 17024). A true and correct copy of Panakeia Purchase Order No. 17024 is attached hereto as **Exhibit "O."**

67.

On October 15, 2018, Chart acknowledged the Panakeia Purchase Order No. 17024 and fulfilled it at the $4,702.00 price. A true and correct copy of the Chart Acknowledgement is attached hereto as **Exhibit "P."**

68.

On October 18, 2018, Panakeia placed an order for an additional SAROS unit at the $4,702.00 price (Purchase Order No. 17048). A true and correct copy of Panakeia Purchase Order No. 17048 is attached hereto as **Exhibit "Q."**

69.

On October 18, 2018, Chart refused to acknowledge Panakeia Purchase Order No. 17048, and provided an "updated" price list for Panakeia to use for all future purchases. A true and correct copy of Chart's response from Christopher Southerland is attached hereto as **Exhibit "R."**

70.

The October 18, 2018 Price List provided by Chart identified a price of $7,500.00 for the SAROS Unit, and completely ignored the July 2018 price sheet provided by Chart pursuant to Section 7 of the PGCD Agreement which instituted a 59.5% price increase over the 2017 prices.

71.

No additional notices were provided for the increase in the SAROS unit from $6,250.00 to $7,500.00, and the resulting price increase to Panakeia resulted in a 59.5% price increase over 2017's Panakeia price.

72.

Chart has identified ADS as its military distributor and is offering a substantial discount to ADS for the purchase of the SAROS units to fulfill the OGFP Prime Contract.

73.

The Chart Entities and Non-Party ADS have squeezed Panakeia out of the
OGFP Prime Contract and interfered with sales to Panakeia's existing non-OGFP
military customers by intentionally increasing the prices for the SAROS unit and
related parts to prices above the fair market distributor prices for such SAROS units
and related parts, and then offering those same units and parts for lower prices to
ADS.

74.

At the time, Chart and Caire partnered with ADS to intentionally price
Panakeia out of the government market (notwithstanding its role in the OGFP Prime
Contract and other existing government contracts).

75.

On November 2, 2018, Panakeia received a government rated high priority
Purchase Order from its customer Tribalco for the purchase of 96 SAROS units,
with a verbal commitment that another 34 SAROS units would be ordered shortly
thereafter.  A true and correct copy of Tribalco's Purchase Order is attached hereto
as **Exhibit "S."**

76.

Panakeia immediately issued a government rated high priority Purchase

Order (P.O. No. 17085) to Chart for 96 units at a price of $4,901.84 (the price

increase reflects the contract rate of 4.25% increase over 2017's SAROS price). A

true and correct copy of Purchase Order No. 17085 is attached hereto as **Exhibit**

**"T."**

77.

On November 2, 2018, Chart's Customer Care Representative, Brooke

Bushuiakovish acknowledged PO #17085 and issued an Acknowledgement for 96

units at a price of $7,500.00 per unit. Her email states, "Please note that this order is

on a pricing hold until a revised PO is received noting the following change: #9400-

SEQ: $7,500.00".  A true and correct copy of the Acknowledgment and email from

Brooke Bushuiakovish is attached hereto as **Exhibit "U."**

78.

The cost difference from Panakeia's Purchase Order to Chart's

Acknowledgment is a difference of almost $250,000.00 and Chart's new price for

the SAROS resulted in Panakeia's inability to fill the Purchase Order for its

customer since the cost is higher than the price charged by Panakeia to its customer.

79.

On November 5, 2018, Panakeia promptly notified Tribalco that it could not

fill Purchase Order No. 19F06PKA001.  A true and correct copy of the November 5,

2018 correspondence is attached hereto as **Exhibit "V."**

80.

On November 7, 2018, Panakeia acknowledged Tribalco's Purchase Order

and submitted Order Acknowledgment No. 5153 for the parts it could supply, and

acknowledged it could not fill any of the 96 SAROS units sought.  A true and

correct copy of the November 7, 2018 Order Acknowledgment No. 5153 is attached

hereto as **Exhibit "W."**

81.

Tribalco contacted Chart to determine how to obtain the necessary SAROS

units to fill its needs for 130 units as the kits contain defibrillators, monitors, and

other critical care items that are now held up for deployment to the United States

military and affecting the safety of American troops.

82.

Chart's representative, Christopher Southerland stated in the discussion with

Tribalco that it had no knowledge of Tribalco, or Panakeia's other customers.

83.

During the course of the seven (7) year relationship between the Chart Entities and Panakeia, Chart shipped 99% of the items ordered by Panakeia directly to Panakeia's customers.

84.

Chart's representative, Christopher Southerland participated in a meeting with Tribalco's officers and directors about Tribalco's military program and feedback Tribalco had received about quality control issues approximately eighteen (18) months ago in Charlotte, North Carolina.

85.

Panakeia lost the sale of the 96 units as it was unable to purchase the SAROS units from Chart at the agreed upon price of $4,901.84 and supply them to Tribalco, as agreed, and Tribalco was forced to obtain the SAROS units from ADS.

**CHART'S SALE OF CAIRE TO NGK SPARK PLUG**

86.

On October 1, 2018, Chart announced via a press release that it had executed an agreement to sell the oxygen-related products business including Caire to NGK Spark Plug for $133.5 million.

Plaintiff's First Amended Complaint                                    Page 26

87.

Chart and Caire may have increased Panakeia's prices, and issued the July price increase and the October 2018 (without notice) in order to generate more income for Caire for purposes of the NGK Spark Plug acquisition.

88.

Upon information and belief, on or about December 20, 2018, NGK Spark Plug completed the acquisition of Caire from Chart.

89.

On December 27, 2018, Panakeia received a Purchase Order from a third party, Cardinal Health for the purchase of four (4) SAROS units.

90.

Panakeia immediately issued its Purchase Order No. 17253 to purchase four SAROS units at the July 2018 quoted price of $6,250.00 from the Chart Entities. A true and correct copy of P.O. Number 17253 along with Panakeia's e-mail transmittal of same is attached hereto as **Exhibit "X."**

91.

On December 28, 2018, Caire's representative, Elizabeth Walden responded

it could not fulfill Panakeia's Purchase Order No. 17253. No reason was provided.

A true and correct copy of her e-correspondence is attached as **Exhibit "Y."**

92.

Neither of the Chart Entities had refused to acknowledge an Order from

Panakeia without an explanation prior to December 28, 2018.

93.

Panakeia was unable to purchase the SAROS units to fill the order from

Cardinal Health due to Caire's refusal to acknowledge Panakeia's Purchase Order

No. 17253 which included the higher price from the July 2018 pricing list.

## COUNT I - BREACH OF CONTRACT
### (Breach of the PGCD Agreement)

94.

Panakeia re-alleges and incorporates each of the foregoing paragraphs by

reference as if fully set forth herein.

95.

Pursuant to the PGCD Agreement, Panakeia is a non-exclusive distributor of the Chart Entities' goods and products.

96.

The PGCD requires Panakeia to market and promote Caire's goods and products, maintain technical skills necessary to effectively promote the sales of Caire's goods, maintain an internet presence to promote Caire's goods and products, and perform other services to promote Caire and Chart's sales. (PGCD Agreement, Exhibit "J" generally).

97.

In exchange for the services provided by Panakeia, the Chart Entities provided Panakeia with preferred pricing so that it could market, sell and distribute Caire's products.

98.

For more than seven (7) years, Panakeia marketed and sold the Chart Entities' products in the Government Territory, as that term is defined in the PGCD, and successfully assisted ADS in being awarded the OGFP Contract, the term of which coincided with the term of the PGCD Agreement ending on August 31, 2019.

99.

On July 16, 2018, the Chart Entities notified Panakeia of a price increase for the SAROS unit and related accessories, but did not consult with Panakeia on the price.

100.

Pursuant to Section 7 of the PGCD Agreement, the Chart Entities provided ninety (90) days advance notice of the price increase to be effective on October 15, 2018.

101.

On October 18, 2018, Panakeia issued a Purchase Order at its prior price, $4,702.00 to Chart which was rejected because of a price change.

102.

On October 18, 2018, Chart notified Panakeia of a new price change for the SAROS unit, $7,500.00, an increase of 59.5% over the price offered through October 15, 2018, and no notice was provided to Panakeia of the increase in price to $7,500.00.

103.

The July 16, 2018 Notice of Price Increase letter which provided 90 days advance notice of the price change identified a price of $6,250.00 for the SAROS

Plaintiff's First Amended Complaint                                    Page 30

Unit, but no corresponding 90-day notice was provided for the $7,500.00 price increase.

104.

Chart breached the PGCD Agreement by failing to provide advance notice of the price increase for the SAROS unit to $7,500.00 from the $6,250.00 noticed on July 16, 2018.

105.

Chart also breached the PGCD Agreement by failing to provide any advance notice of increase on several of the SAROS parts and accessories.

106.

Chart also breached the PGCD Agreement by failing to provide Panakeia with distributor pricing.

107.

Panakeia expended resources on marketing and selling the Chart Products in exchange for Panakeia preferred pricing.  Without Panakeia preferred pricing, there is no consideration for the services Panakeia is to provide Chart under the PGCD Agreement.

108.

Panakeia purchased a number of batteries and parts for the SAROS Units at prices set forth in the July 2018 "List" Price for the SAROS units, and related parts, and received no "preferred pricing" on those items which Panakeia then had to sell to third parties at a loss.

109.

Panakeia attempted to purchase 4 SAROS Units at the price set forth in the July 2018 Pricing List on or about December 27, 2018 in an effort to meet its purchase order obligations to third party, Cardinal Health, but Caire refused to acknowledge the Order.

110.

 It is unclear if Chart now seeks to charge Panakeia a price in excess of the July 2018 "List" Price or MSRP for the SAROS unit, or if it will continue to refuse to sell SAROS units to Panakeia at all, despite the existence of the PGCD Agreement, and Panakeia's receipt of the July 2018 "List" Price.

111.

By refusing to attempt to resolve the pricing dispute set forth in the August 23, 2018 demand letter sent by counsel for Panakeia, and by refusing to attempt to

resolve this dispute since then, the Chart Entities have further breached the PGCD Agreement.

## 112.

As a result of Defendants' breaches of the material terms of the PGCD Agreement, Panakeia has suffered monetary damages, including compensatory and actual damages, in an amount to be proven at trial but in excess of $75,000.

## 113.

As a result of Defendants' breaches of the material terms of the PGCD Agreement, Panakeia has suffered irreparable injuries for which it lacks an adequate remedy at law.

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Breach of the PGCD Agreement & OGFP IDIQ Contract)

## 114.

Panakeia re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

## 115.

The PGCD Agreement references certain provisions of the OGFP Prime Contract. (See Section 8 of the PGCD Agreement.)

116.

The OGFP Prime Contract is therefore included in the PGCD Agreement, and the terms and conditions, including the 4.25% price cap on price increases during the term of the OGFP Prime Contract are included in the PGCD Agreement as evidenced in writing by the Chart Entities.

117.

The PGCD Agreement states, " The Parties agree that Chart is not bound by any provision not included in this Agreement, or any provisions included in any of its customers, or any Federal Acquisition Regulations, except as setforth (sic) in Exhibit C with respect to the OGFP Government IDIQ contract, that apply to Chart or Distributor as part of Distributor's sales of Products to their customers, unless and until **Distributor obtains Chart's prior written consent to be expressly bound by any such provision.**"

118.

On August 18, 2017, the Chart Entities provided written consent to be expressly bound by the "contracted yearly price increase of 4.25% built into the SAROS agreement to be reflected on all new orders as of September 1, 2017 as set forth in Exhibit "K."

119.

By failing to set the price increase for 2018 at the "contracted yearly price increase of 4.25% built into the SAROS agreement", the Chart Entities have breached the PGCD Agreement, and the implied covenant of good faith and fair dealing.

120.

The OGFP Prime Contract reveals the parties' intent and obligation to be bound by the 4.25% price increase during the term of such OGFP Prime Contract with the expected termination date of August 31, 2019.

121.

Based on the parties' intent and obligation to be bound by the 4.25% price increase annually, Panakeia had pricing set with third party government contractors, like Tribalco.

122.

Panakeia is now unable to fulfill purchase orders to third parties, like Tribalco, and has lost in excess of $250,000.00 due to the Chart Entities' failure to abide by the 4.25% price increase, and now failure to sell SAROS units to Panakeia.

123.

Defendants' transaction with NGK Spark Plug is scheduled to occur on or before December 31, 2018, and the role NGK Spark Plug has played in the breach of the PGCD Agreement by Chart is unclear.

124.

Panakeia reserves the right to amend this pleading to move to add parties as necessary upon the commencement of discovery revealing facts to support such a motion.

125.

The implied covenant of good faith and fair dealing has been violated as the spirit of the PGCD Agreement requires the Chart Entities to comply with the 4.25% price increase included in the OGFP Prime Contract.

126.

Through its misconduct, the Chart Entities have breached the implied covenants of good faith and fair dealing found in the implied terms of the PGCD Agreement, and Panakeia has suffered monetary damages, including compensatory and actual damages, in an amount to be proven at trial, but in excess of $75,000.

127.

As a result of Defendants' breaches of the implied covenants of good faith and fair dealing set forth in the PGCD Agreement, Panakeia has suffered irreparable injuries for which it lacks an adequate remedy at law.

128.

As a result of Defendants' breaches of the implied covenants of good faith and fair dealing set forth in the PGCD Agreement, Panakeia is entitled to specific performance as well as preliminary and permanent injunctive relief, including without limitation an order by the Court holding as follows: (1) that Chart must issue a price list in effect for Panakeia until October 31, 2019 that includes no more than a 4.25% increase in the prices offered to Panakeia for the SAROS products and related accessories in keeping with the OGFP IDIQ Contract;  (2) the acquisition by NGK Spark Plug will not affect the pricing established for Panakeia which is in keeping with the course of dealing between the parties; (3) Caire will continue to abide by the terms of the PGCD Contract and sell the products to Panakeia; and (4) that the Chart Entities must make payment to Panakeia for losses that Panakeia has suffered in the form of lost sales due to the Chart Entities' imposition of the $7,500.00 price (which was imposed without a notice for same) for the SAROS unit.

## COUNT III – DECLARATORY JUDGMENT

129.

Panakeia re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

130.

As set forth herein, there is a genuine and bona fide dispute and an actual controversy and disagreement between Panakeia and the Chart Entities regarding the terms and conditions set forth in the PGCD Agreement and whether the terms and pricing set forth in the OGFP Solicitation are incorporated in the PGCD Agreement, especially after the August 18, 2017 correspondence consent to be bound by the 4.25% was received by Panakeia.

131.

Panakeia is uncertain as to its rights and obligations as the Chart Entities currently refuse to fulfill purchase orders placed by Panakeia for the purchase of SAROS units at the sales prices set forth in the July notice provided to Panakeia.

132.

Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, Panakeia requests that the Court declare the following:

Plaintiff's First Amended Complaint                                    Page 38

(a) The PGCD Agreement is a valid and enforceable contract;

(b) The PGCD Agreement requires the Chart Entities and/or Caire individually (if it has been sold) to fulfill purchase orders reasonably placed by Panakeia until August 31, 2019; and

(c) The PGCD Agreement incorporates the OGFP Solicitation terms and conditions, including the commitment to be bound by the 4.25% pricing set forth in the OGFP Solicitation and the August 18, 2017 correspondence attached hereto as Exhibit "K."

## <u>COUNT IV – NEGLIGENT MISREPRESENTATION</u>

### 133.

Panakeia re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

### 134.

The Chart Entities misrepresented to Panakeia the following: (a) that they would abide by the 4.25% annual price increase for the SAROS and related parts and accessories in keeping with the OGFP IDIQ Contract; (b) that they would provide Panakeia with preferred pricing in exchange for execution of the PGCD Agreement; (c) that the preferred pricing would be in consideration for the work

Plaintiff's First Amended Complaint                                     Page 39

done by Panakeia to promote the Chart Entities within the Department of Defense;

and that the OGFP IDIQ pricing increases of 4.25% annually would continue in

effect until August 31, 2019.

135.

The Chart entities negligently supplied false information to Panakeia.

136.

Panakeia reasonably relied upon the Chart Entities' misrepresentations as

described herein, including without limitation, the Chart Entities numerous

omissions and misrepresentations about Panakeia's role as a preferred distributor of

the SAROS units and related parts and accessories, Panakeia's "preferred" pricing

as a distributor, ADS' more limited role as a sub-distributor to Panakeia, and

Panakeia's role in the OGFP contract which is outside the PGCD Agreement.

137.

The Chart Entities' omissions and representations to Panakeia as described

herein, including without limitation the Chart Entities' numerous omissions and

misrepresentations about Panakeia's role as a preferred distributor of the SAROS

units and related parts and accessories, Panakeia's "preferred" pricing as a

distributor, and Panakeia's role in the OGFP relationship constitute negligent misrepresentations to Panakeia under Georgia law.

138.

The Chart Entities' negligent omissions and misrepresentations to Panakeia have proximately caused damages and losses to Panakeia and entitle them to an aware of monetary damages, including compensatory and actual damages in excess of $75,000.00.

139.

The Chart Entities' actions as described herein show willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care raising the presumption of conscious indifference to consequences, and entitle Panakeia to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## COUNT V – PROMISSORY ESTOPPEL
### (in the alternative to Count I)

140.

Panakeia re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

141.

In the event the Court determines that the PGCD Agreement is unenforceable, or that the dispute between Panakeia and the Chart Entities exists outside of the terms of any written contract, then Panakeia pleads Count V in the alternative to Count I.

142.

The Chart Entities made promises to Panakeia as set forth herein.

143.

The Chart Entities should have reasonably expected Panakeia to rely on the promises Chart made, including but not limited to:

(a) Panakeia would be Chart's distributor for the Government contracts and Chart would provide Panakeia with preferred pricing in consideration for the marketing and sales costs it incurred in selling Chart's products;

(b) Panakeia would not receive any price increases in excess of the yearly price limit on price increases of 4.25% established in the July 28, 2014 meeting between Chart and Panakeia as a condition to the award of the OGFP Prime Contract;

(c) Panakeia would purchase the SAROS units under the OGFP Prime

Contract, along with the other items in the OGFP and ADS would

"package" the items and ship them for fulfillment under the OGFP Prime

Contract;

(d) Panakeia, Chart and ADS were partners in the OGFP Prime Contract and

would fulfill the Government orders.

144.

Panakeia reasonably and justifiably relied to its detriment on each of

Defendant's promises by agreeing to the terms of the OGFP Prime Contract, and

setting prices accordingly.

145.

Injustice can only be avoided by the enforcement of each of Defendants'

promises to Panakeia.

## <u>COUNT VIII – UNJUST ENRICHMENT</u>
### (in the alternative to Count I)

146.

Panakeia re-alleges and incorporates each of the foregoing paragraphs by

reference as if fully set forth herein.

147.

Panakeia has conferred valuable benefits on Defendants by marketing and selling the Chart Entities' products, helping procure the OGFP Prime Contract, and serving as a liaison between Chart and the Government.

148.

Although Defendants accepted the benefits conferred upon them by Panakeia, Defendants have failed and refused to adequately compensate Panakeia for the value of such benefits.

149.

As a result of Defendant's failure and refusal to adequately compensate Panakeia for the value of the benefits conferred, Defendants have been unjustly enriched.

150.

To avoid injustice and remedy Defendants' unjust enrichment, Panakeia should be awarded the full and appropriate value of the benefits it conferred upon Defendants.

## COUNT IX – ATTORNEYS' FEES AND COSTS

151.

Panakeia re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

152.

Defendants have acted in bad faith, been stubbornly litigious and have caused Panakeia unnecessary trouble and expense in this case.

153.

Panakeia is entitled to an award of the reasonable attorneys' fees and costs it has incurred in this matter under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Panakeia prays for the following relief:

a. Judgment in Panakeia's favor on all claims asserted against Defendants;

b. Monetary damages arising from Defendant's breaches of the terms of the PGCD Agreement in an amount to be proven at trial but in excess of $75,000, including without limitation compensatory and actual damages;

c. Monetary damages arising from Defendant's breaches of the implied covenant of good faith and fair dealing found in the terms of the PGCD and the OGFP Solicitation Agreements in an amount to be proven at trial but in

excess of $75,000, including without limitation compensatory and actual damages;

d. A declaration that the PGCD Agreement is valid and enforceable and in the 4.25% pricing increases are part of such Agreement that is in effect until August 31, 2019;

e. Compensatory, actual and punitive damages arising from Defendants' negligent misrepresentations;

f. An order from the Court enforcing each of Defendants' promises to Panakeia pursuant to its promissory estoppel claims which are pled in the alternative to Count I;

g. An award of the value of the benefits conferred upon Defendants by Panakeia in an amount to be determined at trial pursuant to Panakeia's unjust enrichment claim against Defendants which is pled in the alternative to Count I;

h. An order by the Court for specific performance of the 4.25% cap incorporated into the PGCD Agreement until the term expires on the OGFP Prime Contract;

i. An order by the Court preliminarily and permanently enjoining Defendant and its officers, directors, agents, servants, employees, parents, subsidiaries,

affiliates, successors, assigns and all others acting in concert with it from

further breaching the terms of the PGCD Agreement;

j.  An award of the attorneys' fees and costs incurred by Panakeia in this case

pursuant to O.C.G.A. § 13-6-11;

k.  Pre-judgment interest; and

l.  Such other relief to Panakeia as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Panakeia hereby demands a jury trial on all

issues so triable raised in this action.

Respectfully submitted this the 2nd day of January, 2019.

FISHERBROYLES, LLP

/s/*Cammi R. Jones*_____
CAMMI R. JONES
Georgia Bar No. 398999
cammi.jones@fisherbroyles.com
VINCENT BUSHNELL
Georgia Bar No. 098999
vincent.bushnell@fisherbroyles.com
945 E. Paces Ferry Rd., Suite 2000
Atlanta, Georgia 30326
Tel: 404-551-3585
Fax: 404-478-6834
*Attorneys for Plaintiff*
*Panakeia, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **PANAKEIA, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | **NO. 1:18-cv-05209-MLB** |
| **v.** | ) | |
| | ) | |
| **CHART INDUSTRIES, INC. and** | ) | |
| **CAIRE, INC., a wholly owned subsidiary** | ) | |
| **of CHART INDUSTRIES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————— | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2019, I caused the foregoing document to

be filed with the Clerk of Court using the CM/ECF system, which automatically

will send electronic mail notification to the following attorneys of record:

Petrina A. McDaniel
petrina.mcdaniel@squirepb.com
Keshia Lipscomb
keshia.lipscomb@squirepb.com
Christopher Gordon
christopher.gordin@squirepb.com

/s/*Cammi R. Jones*_____
CAMMI R. JONES
Georgia Bar No. 398999

Plaintiff's First Amended Complaint                    Page 48