**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Panakeia, LLC,

                         Plaintiff,        Case No. 1:18-cv-05209

v.                                 Michael L. Brown
                                      United States District Judge

Chart Industries, Inc., and Caire,
Inc., a wholly owned subsidiary of
Chart Industries, Inc.,

                      Defendants.

_____/

## ORDER

Plaintiff Panakeia, LLC ("Panakeia"), sued Defendants Chart Industries, Inc. ("Chart") and Caire Inc. ("Caire"), alleging primarily breach of contract. Defendants move to dismiss the complaint. (Dkt. 28.) The Court grants Defendants' motion.

## I.    Background

Chart manufactures the SAROS, a lightweight portable oxygen generation system used by the United States military and other

purchasers. (Dkt. 20 ¶¶ 17, 23.)[1] Pamela Jackson and Jim Meadows

worked for a company that Chart bought. (*Id.* ¶¶ 15–16.) While working

there, Jackson and Meadows helped develop the SAROS. (*Id.*) They

founded Panakeia in January 2011 with the encouragement of a Chart

executive. (*Id.* ¶ 22.) Panakeia markets and sells the SAROS and other

Chart products to the federal government. (*Id.* ¶ 23.) In April 2011,

Panakeia entered into a non-exclusive distribution agreement with

Chart. (*Id.* ¶ 24.) Chart and Panakeia modified the agreement to include

prices for other Chart products that Panakeia would distribute. (*Id.*

¶ 28.)

In 2014, the U.S. Army's Medical Research and Material Command

issued a formal solicitation for the Oxygen Generating Field Portable

("OGFP"), an oxygen generating system of which the SAROS was the

principal component. (*Id.* ¶ 31.) The OGFP proposal was for four years.

(*Id.* ¶ 39.) Because of this extended time, Panakeia required price

guarantees from Chart for its financial planning. (*Id.*) In July 2014,

---

[1] Caire is Chart's fully owned subsidiary. The contract at issue here
refers to "Caire, Inc." and "Chart." (Dkt. 20-10 at 2.) As the distinction
between the two entities does not impact this motion's outcome, the Court
refers to the two entities collectively as Chart.

Chart agreed to limit any annual price increase to 4.25% of the current cost. (*Id.* ¶ 40.) In August 2015, the U.S. Army awarded Panakeia and its sub-distributor a four-year fixed-price contract. (*Id.* ¶ 44.) In March 2016, a Chart representative confirmed that Chart would "honor the 4.25% increases starting September 1, 2016 and each year afterward." (*Id.* ¶ 48.)

In July 2017, Chart presented Panakeia with a new distribution agreement, entitled the Partner Government Channel Distributor Agreement ("PGCD Agreement"). (*Id.* ¶ 50.) Chart claimed this new agreement incorporated new federal regulations and changed other minor terms between the parties. (*Id.*) The PGCD Agreement's pricing term stated: "Chart may, from time to time, at any time and in its sole discretion after consultation with Distributor, change such prices, such change to be effective 90 days after given notice to Distributor. (Dkts. 20 ¶ 52; 20-10 at 5 § 7.) The PGCD Agreement also contained a merger clause, which stated "[t]his Agreement constitutes the entire agreement between Chart and Distributor and supersedes all prior verbal or written agreements or understandings, whether express or implied, by either party or any of its representatives pertaining to this subject matter."

(Dkt. 20-10 at 2 § 2.)  And a separate section holds that "Chart is not bound by any provisions not included in this Agreement."  (Dkt. 20-10 at 5 § 8.)

In August 2017, Chart raised the SAROS price.  (Dkts. 20 ¶ 53; 20-11.)  Chart wrote Panakeia, stating "[t]his letter serves as notice that the contracted yearly price increase of 4.25% built into the SAROS agreement will be reflected on all new orders as of September 1, 2017." (*Id.*)  At this point, each SAROS unit cost $4702.  (Dkt. 20 ¶ 55.)  In July 2018, Chart again raised the SAROS price, this time by 32.9% to $6250. (Dkts. 20 ¶¶ 57–58; 20-12.)  Informing Panakeia of the price increase, the Chart representative wrote, "[h]aving discussed the need to increase the prices of certain Products sold pursuant to the Agreement, [Chart] is hereby providing Distributor written notice of the price increase as listed in Exhibit A to this letter."  (Dkts. 20 ¶ 59; 20-12 at 2.)  The letter stated these price increases would go into effect on October 15, 2018.  (Dkt. 20-12 at 2.)

On October 15, 2018, Panakeia placed an order with Chart for SAROS units at $4702 per unit.  (*Id.* ¶ 66.)  Chart fulfilled that order. (*Id.* ¶ 67.)  On October 18, 2018, Panakeia placed another order with

Chart for SAROS units at $4702 per unit. (*Id.* ¶ 68.) Chart refused to fulfill this order, stating the correct price was $7500. (Dkts. 20 ¶ 70; 20-18 at 4.)

On Friday, November 2, 2018, Panakeia received an order for SAROS units. (Dkts. 20 ¶ 75; 20-19.) Panakeia reached out to Chart to purchase the units. (Dkt. 20 ¶ 76.) Panakeia sought to buy these units for $4,901.84, a 4.25% increase over the 2017 price of $4702. (Dkts. 20 ¶ 76; 20-20 at 2.) Chart responded that the SAROS price was $7500. (Dkts. 20 ¶ 77; 20-21.) Panakeia declined to purchase SAROS units at that price and told its customer that it could not fulfill the order. (Dkts. 20 ¶¶ 78–79; 20-22.) That same day, Chart reached back out to Panakeia, saying it made a mistake with the $7500 price, and the correct price of a SAROS unit was $6250. (Dkt. 28-2.)

In December 2018, Panakeia tried to purchase SAROS units for $6250. (*Id.* ¶ 90.) Chart declined to fulfill that order without explaining why. (*Id.* ¶ 91.) Panakeia sued, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment. (Dkt. 20.)

## II.    Standard of Review

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

## III.   Discussion

### A.    Breach of Contract

To establish a breach of contract, a plaintiff must show "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom."  *Kabir v. Statebridge Co., LLC*, No. 1:11-cv-02747, 2011 WL 4500050, at *7 (N.D. Ga. Sept. 27, 2011) (quotation marks and citation omitted).  Defendants appear to agree the PGCD was a valid contract.  (*See* Dkt. 28-1 at 11.)  Plaintiff claims Defendants breached the contract in several ways.  First, Plaintiff argues Chart breached the contract by

6

failing to give notice of raising the SAROS unit price to $7500 from $6250. The PGCD Agreement stated that before raising the price of a SAROS unit, Chart had to consult with Panakeia and had to give ninety-days' notice. Chart adhered to this contractual term in July 2018, informing Panakeia a SAROS unit would cost $6250 effective October 15, 2018. (Dkt. 20-12 at 2.)

Chart did not adhere to this contractual term, however, when it sought $7500 from Panakeia that October 18 and November 2, 2018. (Dkts. 20-18; 20-21.) A breach of contract claim, however, requires a material breach. A breach is material if it is "so substantial and fundamental as to breach the object of the contract." *Forsyth Cty. v. Waterscape Servs., LLC*, 694 S.E.2d 102, 111–12 (Ga. Ct. App. 2010). The purpose of the PGDC Agreement was to provide Panakeia with pricing stability for the SAROS and related products. Panakeia ostensibly needed this stability to sell the product to other purchasers. Having the correct price for the SAROS could have been a fundamental purpose of the contract and so an incorrect price that made the SAROS unaffordable could have been a material breach. Chart claims that it cured its breach

by informing Panakeia of the pricing error on November 5, 2018.[2]  This

cure, however, occurred after Panakeia lost a contract because of the

incorrect price.  (Dkt. 20 ¶ 79.)

Even so, this breach of contract claim still fails because Plaintiff

does not allege any compensable damages.  Plaintiff did not buy any

SAROS units for $7500.  Plaintiff's claims thus rest on uncompleted sales

because of the high SAROS price, making the alleged damages

consequential damages.  The PGCD Agreement, however, prohibits the

recovery of consequential damages.  (Dkt. 20-10 at 11 § 29.)  And Georgia

law permits excluding consequential damages.  *See Silverpop Sys., Inc.*

*v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 856 n.9 (11th Cir. 2016)

("Under Georgia law, 'to the extent that consequential damages are

recoverable in breach of contract actions, a clause excluding such

damages is valid and binding unless prohibited by statute or public

---

[2] Chart shows the cure of this breach in an exhibit attached to its Motion to Dismiss.  (*See* Dkt. 20-2.)  Though this document was not attached to the Complaint, the Court considers it because in Georgia "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents as part of the pleadings for the purposes of Rule 12(b)(6) dismissal."  *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

policy.'" (quoting *Mark Singleton Buick Inc. v. Taylor*, 391 S.E.2d 435,

437 (Ga. Ct. App. 1990) (alteration accepted))).  The Court thus dismisses

this claim for the failure to state damages.  *See Gonsalves-Carvalhal v.*

*Aurora Bank, FSB*, No. 1:14-cv-00151, 2016 WL 5339695, at *3 (N.D. Ga.

July 1, 2016) (granting motion to dismiss contract claim for plaintiff's

failure to allege compensable damages).

Plaintiff next claims Defendants failed to provide notice of the price

increase for SAROS parts and accessories.  The PGCD Agreement states

that "Distributor [Plaintiff] will receive the prices listed for each Product

in the Price List" which Chart may change "from time to time and in its

sole discretion."  (Dkt. 20-10 at 5 § 7.).   A Chart representative wrote

Plaintiff on July 16, 2018, that Chart would raise the prices for certain

products on October 15, 2018.  (Dkt. 20-12.)  Plaintiff has made no

allegations of when or how much Chart inappropriately raised the prices

of SAROS parts and accessories. Without these details, Plaintiff's claims

are conclusory, especially as the correspondence shows that Chart

informed Plaintiff that the prices of SAROS parts and accessories would

go up. The Court rejects Plaintiff's argument as conclusory.  *See Jackson*

*v. BellSouth Telecommc'ns*, 372 F.3d 1250, 1262 (11th Cir. 2004)

("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." (quotation marks and citation omitted)).

Plaintiff claims Defendants breached the contract by refusing to resolve their price dispute. The PGCD Agreement, however, does not require Defendants to attempt to resolve the dispute. The Court rejects Plaintiff's argument. Plaintiff also argues Chart did not provide it with distributor pricing. But the PGCD Agreement created no duty for Chart to sell Plaintiff SAROS units at all. (See Dkt. 20-10 at 6 ("Chart reserves the right to refuse to approve or accept, for any reason, which it may, in sole discretion, deem sufficient.").) Defendants thus did not breach the PGCD Agreement by refusing to sell Panakeia SAROS units.

To the extent that Plaintiff alleges Chart breached the PGCD Agreement by raising the SAROS unit price more than 4.25%, Plaintiff's claim fails. Plaintiff argues the August 18, 2017, letter states that Chart will only raise prices by 4.25%. (*See* Dkt. 20-11.) That letter states Chart will raise prices by 4.25% — it does not state Chart will only raise prices by 4.25%. Chart thus had the right to raise the SAROS price by more than 4.25%.

The Court dismisses Plaintiff's breach of contract claim.

## B.     Implied Covenant of Good Faith and Fair Dealing

Plaintiff claims Defendants breached the implied covenant of good faith and fair dealing.  A claim for breach of the implied covenant of good faith and fair dealing, however, is not an independent claim.  *See Secured Realty Inv. v. Bank of N. Ga.*, 725 S.E.2d 336, 339 (Ga. Ct. App. 2012) ("The implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." (citation omitted)).  Since Plaintiff's breach of contract claim fails, Plaintiff's claim for the breach of implied covenant of good faith and fair dealing also fails.

## C.     Declaratory Judgment

Plaintiff seeks a declaratory judgment that (1) the PGCD Agreement is a valid and enforceable contract; (2) the PGCD Agreement requires Defendants to fulfill purchase orders reasonably placed by Panakeia until August 31, 2019; and (3) the PGCD Agreement incorporates the OGFP Solicitation terms and conditions, including the commitment to be bound by the 4.25% pricing increase.  (Dkt. 20 ¶ 132.)

The Court already addressed these issues when resolving the breach of contract claims.  In short, the PGCD is a valid and enforceable contract, but the PGCD Agreement does not require Defendants to fulfill purchase orders and it does not incorporate the 4.25% price increase.

Plaintiff's declaratory judgment claim is repetitive of its breach of contract claim, and the Court denies it.  *See Wright v. Wells Fargo Bank, N.A.*, No. 1:15-cv-02416, 2015 WL 12159206, at *4 (N.D. Ga. Oct. 8, 2015) ("A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms is nothing more than a petition claiming breach of contract." (citation omitted)).

## D.    Negligent Misrepresentation

Plaintiff claims Chart negligently misrepresented that (1) it would abide by the 4.25% annual price increase; (2) it would provide Panakeia with preferred pricing; and (3) this preferred pricing would last through August 2019.  To establish a negligent misrepresentation claim, a plaintiff must allege "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury

proximately resulting from such reliance." *T.V.D.B. Sarl v. Kapla USA, LP*, No. 4:12-cv-00230, 2013 WL 6623186 at \*6 (N.D. Ga. Jan. 9, 2014). Under Georgia law, "a merger clause operates as a disclaimer of all representations not made on the face of the contract." *C&C Family Tr. v. AXA Equitable Life Ins. Co.*, 654 F. App'x 429, 434 (11th Cir. 2016) (quoting *Ekeledo v. Amporful*, 642 S.E.2d 20, 23 (Ga. 2007)); *see Morris v. Progressive Health Rehab. LLC*, No. 3:05-cv-00010, 2007 WL 908646, at \*10 (M.D. Ga. Mar. 22, 2007) ("If the contract contains a merger clause, a party cannot argue that it relied upon representations other than those contained in the contract.").

The PGCD Agreement contains a merger clause. (*See* Dkt. 20-10 at 2 ("This Agreement constitutes the entire agreement between Chart and Distributor and supersedes all prior verbal or written agreements or understandings, whether express or implied, by either party of any of its representatives pertaining to this subject matter . . . ."). Plaintiff thus cannot have reasonably relied on Defendants' statements. The Court dismisses Plaintiff's negligent misrepresentation claim.

### E.    Promissory Estoppel and Unjust Enrichment

Plaintiff also claims promissory estoppel and unjust enrichment in the alternative to the breach of contract claim.  A plaintiff, however, cannot bring a promissory estoppel or unjust enrichment claim when his or her claims are based on a contract.  *See Phillips v. Ocwen Loan Serv., LLC.,* No. 1:12-cv-03861, 2013 WL 4854760, at *7 (N.D. Ga. Sept. 11, 2013) ("[W]here a plaintiff seeks to enforce an underlying contract which is reduced to writing, promissory estoppel is not available as a remedy." (quoting *Adkins v. Cagle Foods JV, LLC,* 411 F.3d 1320, 1326 (11th Cir. 2005)); *Fed. Ins. Co. v. Westside Supply Co.*, 590 S.E.2d 224, 232 (Ga. Ct. App. 2003) ("Recovery under [the theory of unjust enrichment] presupposes the absence of a contractual agreement.").  As the parties agree the PGCD Agreement is a valid contract, Plaintiff cannot bring the promissory estoppel or unjust enrichment claims.

### F.    Attorneys' Fees

Plaintiff's claim for attorneys' fees and costs fails because the Court dismisses Plaintiff's independent causes of action.  *See 4WD Parts Ctr. Inc. v. Mackendrick,* 579 S.E.2d 772, 777–78 (Ga. Ct. App. 2003)

("Attorney fees are not recoverable under OCGA § 13-6-11 where there is no award of damages or other relief on any underlying claim.").

## IV.  Conclusion

The Court **GRANTS** Defendants Chart and Caire's Motion to Dismiss (Dkt. 28).  This case is **DISMISSED**.

**SO ORDERED** this 21st day of February, 2020.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

15